```
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

SARA ANNE ABBEY,

                    Plaintiff,          6:17-CV-06430(MAT)
         -v-                             DECISION AND ORDER

NANCY A. BERRYHILL, *Acting
Commissioner of Social Security*,

                    Defendant.
_____
```

## INTRODUCTION

Sara Anne Abbey ("Plaintiff"), represented by counsel, brings this action under Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Commissioner's decision is reversed, Plaintiff's motion is granted and the matter is remanded solely for calculation and payment of benefits. Defendant's motion is denied.

## PROCEDURAL BACKGROUND

On January 13, 2014, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning September 10, 2013 due to an anaphylactic allergy to latex, learning disabilities,

1

hearing problems, left knee problems, chronic depression, asthma, urticaria, psoriasis, and allergy-induced eczema. Administrative Transcript ("T.") 65-66. The applications were initially denied on March 12, 2014, and Plaintiff timely requested a hearing. T.87-105. A hearing was conducted on September 22, 2015 by administrative law judge ("ALJ") Lauren Penn, with Plaintiff appearing with her attorney. T. 36-64.

The ALJ issued an unfavorable decision on December 17, 2015. T. 810-30. Plaintiff timely requested review of the ALJ's decision by the Appeals' Council. T. 7-9. The Appeals Council denied Plaintiff's request for review on May 3, 2017, making the ALJ's decision the final decision of the Commissioner. T. 1-6. This action followed.

## **THE ALJ'S DECISION**

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through June 30, 2016. T. 15. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 10, 2013, the alleged onset date. *Id*.

At step two, the ALJ determined that Plaintiff had the severe impairments of asthma, hearing processing delay, knee arthropathy, latex allergy, urticaria, learning disorder, and affective disorder. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or

2

medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. T. 16-17.

Before proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations: can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; is limited to simple, routine, repetitive tasks; must avoid even moderate exposure to fumes, odors, dusts, gasses, poor ventilation, and other pulmonary irritants; must avoid even moderate exposure to latex; will miss no more than one day of work per month due to her impairments and their symptoms; must be in a job that requires only occasional phone work. T. 17.

At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work. T. 23. At step five, the ALJ relied on the testimony of a vocational expert ("VE") to determine that a person of Plaintiff's age, and with her education, work experience, and RFC, could perform the requirements of jobs that exist in significant numbers in the national economy, including the representative occupations of sewing machine operator, ticket seller, and routing clerk. T. 24-25. The ALJ accordingly found that Plaintiff had not been under a disability, as defined in the Act, since the application date. T. 25.

**DISCUSSION**

**I.  Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error.  42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

In this case, Plaintiff contends that remand for calculation and payment of benefits is warranted because the ALJ improperly rejected the opinion of her treating physician Dr. Marc Lavender

4

that she required a completely latex-free environment. In the alternative, Plaintiff argues that further administrative proceedings are required because the ALJ failed to develop the record and presented the VE with incomplete hypothetical questions. For the reasons discussed below, the Court agrees with Plaintiff that, under the applicable regulations, the ALJ was required to afford controlling weight to Dr. Lavender's opinion. Moreover, because Dr. Lavender's opinion establishes conclusively that Plaintiff suffers from disabling limitations, remand of this matter solely for calculation and payment of benefits is warranted.

**II. Evaluation of Dr. Lavender's Opinion**

Plaintiff contends that the ALJ failed to properly evaluate Dr. Lavender's disability-supporting opinions. In particular, Plaintiff notes that Dr. Lavender opined that she required a 100% latex-free environment, because "exposure to even the smallest concentration of latex can send [Plaintiff] into a <u>life-threatening</u> episode of anaphylaxis" (T. 699) (emphasis added). Plaintiff argues that the ALJ failed to articulate good reasons for rejecting this conclusion from her treating physician. The Court agrees, for the reasons discussed below.

Under the Commissioner's regulations in place at the time the ALJ issued her decision in this case, a treating physician's opinion is entitled to controlling weight where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not otherwise inconsistent with the substantial evidence of record. *See Green-Younger*, 335 F.3d at 106.

5

An ALJ may give less than controlling weight to a treating physician's opinion if it does not meet this standard, but must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). The ALJ is required to consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues" in determining how much weight to afford a treating physician's opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted). However, the ALJ need not expressly discuss each of these factors, so long as her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (citing *Halloran*, 362 F.3d at 31–32).

In this case, Dr. Lavender, Plaintiff's primary care physician, issued multiple opinions regarding Plaintiff's capabilities. Because the Court's decision rests solely on Dr. Lavender's assessment of Plaintiff's latex-related allergy, the Court has limited its discussion to those aspects of Dr. Lavender's opinions.

On February 14, 2013, Dr. Lavender completed an assessment of Plaintiff's work-related capabilities in which he opined that her

ability to function in a work setting would be compromised if she had an anaphylactic reaction. T. 417. On February 13, 2014, Dr. Lavender completed a Physical Medical Source Statement related to Plaintiff in which he noted that exposure to latex caused Plaintiff to develop "anything from breathing difficulties to urticaria to anaphylaxis." T. 563. Dr. Lavender opined that Plaintiff would need two to three unscheduled breaks per day if exposed to environmental allergens (T. 564) and that she would be absent from work about four days per month as a result of her established impairments (T. 566).

On July 22, 2015, Dr. Lavender completed another Physical Medical Source Statement related to Plaintiff's condition. T. 617-20. Dr. Lavender again noted that Plaintiff suffered from symptoms including "[s]hortness of breath, hives, congestion, & even anaphylaxis on exposure to allergic triggers." T. 617. Dr. Lavender stated again that Plaintiff would need 2-3 unscheduled breaks per day if exposed to allergens (T. 618) and that she would be absent from work about four days per month as a result of her impairments (T. 620). On September 18, 2015, Dr. Lavender authored a letter regarding Plaintiff's "long-standing history of anaphylaxis from latex exposures." T. 699. Dr. Lavender opined that "functioning normally on a day to day basis in any type of work setting" would be "very challenging" for Plaintiff, because it would be "exceedingly difficult for any employer to guarantee a 100% latex-free work environment." *Id*. Dr. Lavender noted that "exposure to even the smallest concentration of latex can send

[Plaintiff] into a life-threatening episode of anaphylaxis," and opined that Plaintiff's "extraordinarily robust sensitivity to latex precludes . . . working in any position of employment outside the home." *Id*.

In her decision, the ALJ afforded "some weight" to Dr. Lavender's opinions, stating that (1) the opinions were internally inconsistent and increasingly restrictive, (2) the opinions were not supported by Dr. Lavender's treatment notes, and (3) the opinions were inconsistent with Plaintiff's testimony. T. 23. The Court has considered the ALJ's statements regarding Dr. Lavender's opinions and, for the reasons set forth below, finds that the ALJ failed to articulate good reasons for rejecting Dr. Lavender's conclusion that Plaintiff required a completely latex-free work environment.

The ALJ indicated that Dr. Lavender's opinions were internally inconsistent, because he "offered no rationale for" the increasing restrictions set forth therein. T. 23. However, the Court finds no inconsistency in Dr. Lavender's opinion regarding Plaintiff's sensitivity to latex exposure. The record in this case makes it clear that Dr. Lavender was initially optimistic that Plaintiff's work environment could be cleared of latex. Indeed, Dr. Lavender worked with Plaintiff's former employer, the Regis Corporation ("Regis"), to attempt to create a safe environment. *See* T.509-13. However, Regis ultimately concluded that it was unable to accommodate Plaintiff because it could not "guarantee an entirely latex-free environment," and because despite having "eliminated

8

latex in the salon as best [it] could," Plaintiff had still sustained "multiple allergic reactions . . . while working." T. 509-10. Regis therefore terminated Plaintiff's employment. T. 510. Dr. Lavender's adjustment of his opinion as a result of this experience with Plaintiff's former employer (and his increasing knowledge regarding the difficulties of eliminating latex in a workplace) does not represent an internal inconsistency. *Cf. Rudt-Pohl v. Astrue*, No. 07 CV 5019(RJD), 2009 WL 2611320, at *3 (E.D.N.Y. Aug. 25, 2009) (in case involving latex allergy, medical expert testified that "if plaintiff could be guaranteed a latex-free environment, she would be employable, but also noted that anyone, anywhere could walk into her workplace with latex").

Moreover, Dr. Lavender's treatment records are fully consistent with his opinions regarding Plaintiff's latex allergy. Dr. Lavender's records show multiple instances of Plaintiff suffering from an anaphylactic reaction upon exposure to latex. *See, e.g.,* T, 429-30, 457, 671. Additionally, the ALJ failed to identify any treatment notes that purportedly contradicted Dr. Lavender's opinion. The ALJ's unsupported assertion that Dr. Lavender's opinion was inconsistent with his treatment notes does not constitute a good reason for affording it less than controlling weight. *See Cordero v. Colvin*, No. 1:15-CV-00845(MAT), 2016 WL 6829646, at *3 (W.D.N.Y. Nov. 21, 2016).

The ALJ also claimed that Dr. Lavender's opinion was inconsistent with Plaintiff's own testimony. In particular, the ALJ noted that Plaintiff had testified at the hearing that carpets

in her home had a latex backing and that, as a result, she had to wear shoes at all times. T. 24. The ALJ concluded that this testimony was inconsistent with Dr. Lavender's conclusion that Plaintiff needed a completely latex-free work environment. The Court disagrees. As a threshold matter, and as Plaintiff points out in her brief, there is no evidence in the record apart from Plaintiff's statements regarding the composition of the carpet backing at issue. Indeed, the American Latex Allergy Association's website indicates that "[t]he latex that holds the fibers and backing together in broadloom carpet is synthetic. Synthetic latex is not associated with the allergic reactions of natural latex, which are caused by the proteins found in natural latex." American Latex Allergy Association, *Myths and Truths About Carpet*, http://latexallergyresources.org/articles/myths-and-truths-about-carpet (last accessed August 15, 2018). Plaintiff also suffers from mental impairments, including a learning disability, and it is therefore reasonably possible that she was merely confused or misinformed regarding this issue. The ALJ failed, however, to take that possibility into account before discounting Dr. Lavender's opinion.

Moreover, even accepting Plaintiff's testimony at face value, it is still not inconsistent with Dr. Lavender's opinion. Plaintiff testified that she was able to prevent coming into contact with the carpet backing by wearing shoes at all times. There is a significant difference in being able to avoid a known source of latex in a controlled environment such as one's own home,

and being in an uncontrolled work environment with unknown potential latex sources, any of which could cause a potentially life-threatening reaction. The ALJ failed to explain how Plaintiff's ability to avoid a known latex source in her own home correlated to an ability to tolerate exposure to latex in a workplace environment.

The Court notes that no medical source in this case opined that Plaintiff could work in an environment containing some latex. To the contrary, immunologist Dr. Richard Looney also instructed Plaintiff to "continue to avoid latex." T. 615. Moreover, Plaintiff was not sent for a consultative examination because Industrial Medicine Associates, the consultative examination provider, uses latex products. T. 9. As such, Dr. Lavender's opinion that Plaintiff required a completely latex-free environment was uncontradicted. "The Second Circuit has 'indicated that when a medical opinion stands uncontradicted, [a] circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome' it." *Wilson v. Colvin*, 213 F. Supp. 3d 478, 483 (W.D.N.Y. 2016) (quoting *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009)). For all the reasons discussed above, the Court finds this standard was not met in this case. Dr. Lavender's opinion regarding Plaintiff's latex allergy was supported by his longitudinal treatment of her, and the ALJ failed to identify good reasons for affording it less than controlling weight.

For the reasons set forth above, the Court finds that the ALJ's decision to give less than controlling weight to Dr. Lavender's opinion that Plaintiff required a completely latex-free environment was erroneous and warrants reversal.

**III. Remedy**

The fourth sentence of § 405(g) of the Act provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ..., with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). Although it is less typical, reversal without remand is the appropriate disposition when there is "persuasive proof of disability" in the record, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980), and further proceedings would be of no use as there is no reason to conclude that additional evidence might support the Commissioner's claim that the claimant is not disabled, *Butts v. Barnhart*, 388 F.3d 377, 385–86 (2d Cir. 2004).

Here, none of the regulatory factors support a decision not to afford controlling weight to treating physician Dr. Lavender's opinion, which is uncontradicted and supported by substantial evidence in the record. Moreover, the record has been fully developed, and further administrative proceedings would serve no purpose. In particular, the Court notes that it has already been determined that Plaintiff cannot undergo a consultative examination.

Had the ALJ properly weighed Dr. Lavender's opinion, and had the RFC assessment properly reflected the extent of Plaintiff's impairments, she would have been found disabled. The VE in this case testified that the requirement of a latex-free environment would eliminate all jobs in the national economy. T. 61-63. Accordingly, the Court finds that the matter should be remanded for calculation and payment of benefits. *See, e.g., Spielberg v. Barnhart*, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005); *Dueno v. Colvin*, No. 1:15-CV-01042(MAT), 2018 WL 1180225, at \*10 (W.D.N.Y. Mar. 7, 2018).

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision finding Plaintiff not disabled must be reversed. Accordingly, Defendant's motion for judgment on the pleadings (Docket No. 18) is denied, Plaintiff's motion for judgment on the pleadings (Docket No. 12) is granted, and the case is remanded solely for the calculation and payment of benefits. The Clerk of Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: August 17, 2018
     Rochester, New York